IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Frank D. Thompson, Jr.,                          :
                           Plaintiff,            :      Civil Action 2:12-cv-00272

          v.                                     :      Judge Watson

Carolyn W. Colvin,                               :      Magistrate Judge Abel
Commissioner of Social Security,
                           Defendant.            :

## REPORT AND RECOMMENDATION

Plaintiff Frank D. Thompson, Jr. brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his application for Supplemental Security Income benefits.  This matter is before the

Magistrate Judge for a report and recommendation on the administrative record and the

parties' merits briefs.

**Summary of Issues.**  Plaintiff Thompson maintains that he became disabled on

July 2, 2007, at age 45, due to sleep apnea, high blood pressure, arthritis, anxiety and

migraine headaches.  (*PageID* 166.)

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge erred by disregarding the disability opinions of Dr. Setnar, and Dr. Torello, both examining physicians, who were not contradicted by any examining source;

- The administrative law judge erred in disregarding the disability opinion of Psychologist Allen Rain, a consultative examiner, who diagnosed a mood disorder, and found multiple areas of marked impairment;

- The administrative law judge failed to correctly assess plaintiff's credibility and failed to state "good reasons" based in the record, for finding him not fully credible.

**Procedural History.**  Plaintiff Thompson filed his application for supplemental security income on March 5, 2008, alleging that he became disabled on July 2, 2007, at age 45.  (*PageID* 149-51.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge. On June 16, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (*PageID* 95-121.)  A vocational expert also testified.  (*PageID* 121-25.)  On September 10, 2010, the administrative law judge issued a decision finding that Thompson was not disabled within the meaning of the Act.  (*PageID* 59-68.)  On January 25, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (*PageID* 47-49.)

**Age, Education, and Work Experience.**  Thompson was born on February 28, 1962.  (*PageID* 149, 162.)  He has a 10th grade, "limited" education.  (*PageID* 171.) Thompson has past relevant work as a pizza delivery driver (August 2006-December 07), janitor (2006, 2008, and 2009) and fence installer (2007-08).  (*PageID* 167, 174-88.) He also worked from 1989 to 2003 while he was incarcerated at the London Correctional Institution. (*PageID* 228.)

**Plaintiff's Testimony.**  Plaintiff testified at the administrative hearing that he completed the 10th grade in school but simply "[d]idn't go much."  (*PageID* 95.)  He can

2

read "some" of the newspaper, "a lot words I can't read." (*Id.*)  Thompson testified his

last job ended because he was falling asleep on the job.  (*PageID* 96.)  He had difficulty

sleeping at night, in which he dozed off and on, but was unable to sleep continuously to

feel rested in the morning.  (*PageID* 98.)  When he sat during the day, he fell asleep after

a short period of time.  (*Id.*)  Thompson said  he never got a good nights sleep.  (*Id.*)  He

awoke every morning with a headache in the back of his head at the base of his skull,

which sometimes lasted 3-4 hours.  (*PageID* 99.)  Thompson took over the counter

medications like Tylenol or Advil as he was unable to afford anything stronger.  (*Id.*).

Thompson testified he was 5'11" and weighed approximately 240 pounds.  (*PageID* 98-

99.)

Thompson testified that he last drank on November 17, 2007, which was the

same day he was shot in the foot.  (*PageID* 101-02.)  At the time of the hearing, he lived

alone in an apartment but had friends who stayed with him at times, because of his

habit of falling asleep with a lit cigarette.  (*PageID* 102.)  His mother and sister lived in

the same building downstairs, and family members checked on him periodically.  (*Id.*)

At the time of the June 2010 hearing, he had not driven for about two years because he

was unable to stay awake while driving. He had tried driving three times in the last six

months, but had to pull over, to let someone else drive due to his inability to stay

awake.  (*PageID* 102-03.)

He was able to take care of his apartment, microwave meals, clean, dust, sweep

and mop, and the like.  (*PageID* 103-04.)  He tried to go to bed between 10:00-11:00 p.m.,

and usually got up around 12:30-1:00 a.m. (*PageID* 104.)  He was up for a few hours drinking coffee, then dozed off again while sitting at his kitchen table.  (*PageID* 104-05.) He noted he falls asleep about 8-10 times a day, for about 1 ½ hours at a time.  (*PageID* 105.)  He never had a night after which he felt rested in the morning.  (*Id.*)

Thompson testified that he had tried a CPAP machine, but it didn't help; after that, he had surgery, which helped for a year or so.  (*PageID* 105-06.)  He has not seen anyone else about the possibility of other surgery and he believes his sleep apnea is getting worse.  (*PageID* 106.)  While in prison, before surgery, his apnea was so severe that he slept in the prison hospital nightly for observation.  (*PageID* 106-07.)

He reported that he generally did not go anywhere but shopping with his 67 year old mother.  (*PageID* 107-08.)   He no longer went fishing because he became short of breath walking from his car to the fishing spot.  (*PageID* 108.)  At the time of the hearing, he was drawing unemployment compensation.  (*PageID* 112-13.)  Until August 2008, he went out and gathered and sold discarded cans for six to eight hours at a time on the weekends. (*PageID* 114-15.)

Thompson testified that he had earned up to $400 a month gathering and selling discarded cans. On weekends, he would work 6-8 hours a day scrapping. He stopped his scrapping work in August 2008 due to worsening symptoms. (*PageID 97-98* and *114-15.* ) At the time of the June 2010 hearing, Thompson had been receiving unemployment compensation benefits of $112 a week for about one year. (*PageID 112-13.*)

4

Thompson served 15 years, 9 months, and 7 days in prison for involuntary manslaughter and armed robbery. Then he was on parole for two years, ending August 15, 2005. (*PageID 112*.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Milton I. Setnar, D.O.  Thompson reported to examining physician, Dr. Setnar, in May 2008 that he resigned from his last job because he was unable to stay awake while driving.  (*PageID* 250.)  Thompson told Dr. Setnar that he was diagnosed with sleep apnea in 1999.  (*Id.*)  He reported that he fell asleep after sitting more than 5-10 minutes; sleepiness caused trouble with concentration; he never felt rested after sleep, and was always tired; he had surgery to repair a deviated septum in November 2000, which improved his symptoms for six month.  He also was on a CPAP machine which was unsuccessful.  He noted he was unable to drive, to tolerate heights, or to maintain concentration.  (*Id.*)

Thompson estimated that he could lift/carry 50 pounds for 20 feet, sit for more than 45 minutes, stand for more than 30 minutes and walk one-and-a half blocks. (*PageID* 204.)  He also reported that he could climb more than 20 steps, perform his own self care, and engage in house cleaning, cooking and simple grocery shopping.  (*Id.*)

On examination, his lungs were not clear to auscultation and percussion, and exhibited rhonchi bilaterally. His abdomen was obese. (*PageID* 251.) Thompson was observed walking more than 50 feet and climbing more than 20 steps without difficulty or dyspnea. Thompson's neurological findings were normal. Dr. Setnar reported Thompson was 69 ½ inches tall and weighed 280 lbs.; obesity did not contribute to any mechanical limitation or dyspnea. Dr. Setnar found no clinical signs of lung disease. (*Id.*)

Dr. Setnar diagnosed Thompson with a sleep related breathing disorder, previously diagnosed as "sleep apnea syndrome", and concluded Thompson was unable to do work-related physical activities for eight hours per day, five days per week due to daytime somnolence; however, he noted that Thompson did not have significant physical limitations. (*PageID* 252.) Dr. Setnar concluded that Thompson's general condition was poor and the prognosis was uncertain, and he recommended a pulmonary function study. (*Id.*)

W. Jerry McCloud, M.D./William Bolz, M.D. On July 17, 2008, Dr. McCloud, a state agency physician, conducted a physical residual functional capacity assessment based on plaintiff's record. (*PageID* 290-97.) Dr. McCloud found that Thompson retained the ability to occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour work day, and push or pull was unlimited. (*PageID* 291.) He found Thompson would be limited to occasionally climb ramps and stairs but could never climb ladders, ropes,

or scaffolds due to daytime somnolence from sleep apnea. (Page ID 292.) Dr. McCloud further precluded Thompson from working around hazards due to daytime somnolence from sleep apnea. (*PageID* 294.) Dr. McCloud concluded that Thompson's symptoms were attributable to a medically determinable impairment. (*PageID* 295.) Dr. McCloud found Thompson's statements were credible. (*Id.*) Dr. McCloud noted that his findings were not significantly different from the examining sources' conclusions. (*PageID* 296.) Another state agency physician, Dr. Bolz affirmed Dr. McCloud's assessment in November 2008. (*PageID* 299.)

Lynne Torello, M.D. On November 19, 2008, after examining Thompson, Dr. Torello completed a Basic Medical report. (*PageID* 300-04.) Dr. Torello listed Thompson's conditions as obstructive sleep apnea, shortness of breath and hypertension. (*PageID* 300.) When discussing his functional abilities, Dr. Torello noted Thompson was able to walk 1 ½ blocks, stand 10 minutes, and sit 10-15 minutes; lifting was limited; he was able to accomplish household tasks with help, and to shop slowly; he had constant shortness of breath, but only slight chest pain. Breathe sounds were clear but distant. She concluded that Thompson would be unemployable for thirty days to nine months. (*PageID* 301.) Dr. Torello noted that he needed his blood pressure controlled before employment.

On November 24, 2008, Thompson underwent a pulmonary function study ("PFS") on referral from Dr. Torello, which documented postbronchodilator FVC (forced vital capacity) of 3.27 (62%), FEVI (forced expiratory volume in 1 second), 2.30

(65%) and DLCO (single breath carbon monoxide diffusing capacity) of 23.6 (61%.)[1]
(*PageID* 305.) The interpretation was mild restrictive lung disease, moderate obstructive
lung disease, which improved to mild following bronchodilators, and moderate
decrease in diffusion capacity, which correlated with the measures of alveolar volume.
(*PageID* 306.)

Grant Medical Center.  Thompson presented to the emergency room in April
2009, complaining that he had fluid in his lower extremities.  (*PageID* 307-13.)  He
reported that he ran out of his diuretic medication and that he did not have a family
doctor. (*PageID* 307.)  On examination, his lower extremities exhibited pitting edema
from his knees to his ankles.  (*Id.*)  His neurological examination was intact.  (*Id.*)  He
was diagnosed with peripheral edema.  (*PageID* 308.)  Thompson's x-ray of the chest
showed no acute process.  (*PageID* 313.)

Mt. Carmel West.  Thompson was hospitalized for three days in November 2009
with diagnosis of ventral hernia, hypertension and obstructive sleep apnea.  (*PageID*
319-26.)  Thompson complained that he had a sharp pain in the right lower side of his
abdomen and reported a 100 lbs. weight gain since February 2009, and five pounds
weight gain in the last five days.  He also noted that a month earlier, he developed
increased shortness of breath while sleeping flat.  Thompson was admitted for

---

[1]Listing 3.02A, for chronic pulmonary insufficiency, requires an FEV1 equal to or less
than 1.55 for an individual 71 inches tall, the relevant FEV1 value for purposes of the listing is
the value after use of bronchodilators. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §3.00(E)

abdominal pain, possibly due to the ventral hernia.  His chest x-ray showed cardiomegaly (an enlarged heart) with clear lungs.  (*PageID* 321.)  His CT of the abdomen showed some nonspecific edema throughout the abdomen that extended to the pelvis.  (*Id.*)  After stabilized with medication, Thompson was advised to follow up with the medical clinic in one to two weeks.  (*PageID* 320.)

**Psychological Impairments.**

Allan Rain, M.A.  Psychologist Allan Rain performed a consultative psycho-logical examination at the request of the state Bureau of Disability Determination on April 29, 2008.  (*PageID* 258-64.) Mr. Rain found that Thompson exhibited a "glum expression," and was not always a reliable historian and chronologist because he seemed confused.  (*PageID* 258.) Thompson claimed that he was experiencing a severe migraine that was distracting him.  (*Id.*)  He had migraines, which immobilized him and caused nausea, dizziness, phonophobia, photophobia, and diaphoresis.  (*PageID* 259.) He was not on prescription medication due to his finances.  (*Id.*)  Thompson also reported that he had been a slow student, who found learning hard, although he was in regular classes.  (*Id.*)  Thompson reported that he was diagnosed with obstructive sleep apnea after a sleep study at OSU in 1998, followed by surgery in 2001.  Mr. Rain noted that Thompson had no history of psychiatric hospitalizations, but had received counseling while he was in prison.  (*PageID* 260.)

Mr. Rain noted that since his involvement with alcohol, Thompson repeatedly exhibited memory problems in all three spheres; he was confused and "even baffled" at

9

times during the exam.  (*Id.*)  Thompson reported that he tired emotionally and physically, and appeared anergic.  (*Id.*)  Thompson also reported that he felt mentally slowed down, and processed information quite slowly. He stated he was depressed and defeated. He appeared dysphoric and was irritable.  (*Id.*)

On mental status examination, he presented with a hang-dog expression, and seldom looked Mr. Rains in the eye.  (*PageID* 261.)  Mr. Rains found that Thompson processed information very slowly, which was associated with both cognitive deficits and psychomotor retardation.  He often did not understand the simplest inquiries and instructions, even after they were repeated or reduced to basic English.  (*Id.*)  He recalled three of five unrelated items, but added several items not pointed out to him; he was unable to name any state surrounding Ohio; he counted backwards from 20 to 1 in 18 seconds, and recited the alphabet in 20 seconds, but could not perform serial 3's. (*PageID* 262.)

Thompson told Mr. Rain that he had an independent lifestyle consisting of managing his own personal and financial affairs, going to the store by himself, navigating the city and interacting with people, including store clerks and the general public.  (*Id.*)

On the WAIS-III subtests, he scored 5 on the similarities subtest, which suggested not only the presence of deficient abstract reasoning, but also of intelligence, possibly due to alcoholic OBS (organic brain syndrome); he scored a 4 on the arithmetic subtest, suggesting difficulty with computation, concentration, and recall; he scored 5 on digits

span subtest, where he transposed numbers, which could be an organic indicator, and again demonstrated serious problems with recall and concentration.  He scored 3 on the comprehension sub tests, which suggested he was not demonstrating the level of insight and judgment normally associated with the ability to plan to manage and direct his own life and future.  (*PageID* 262.)

Thompson reported that his primary daily activity was watching TV; he was unable to perform household chores more than about 20 minutes without tiring emotionally and physically, after which he rested 30 minutes because of increased pain and decreased interest.  (*Id.*)

Mr. Rain diagnosed Thompson with a mood disorder, due to a reported history of alcoholism and assigned him a Global Assessment of Functioning (GAF) score of 40, but noted that from a functional perspective Thompson's GAF score was 60.  (*PageID* 263.)

Mr. Rain opined that Thompson was markedly impaired in his abilities to: relate to others including co-workers and supervisors, perform simple instructions, maintain attention, concentration, persistence, and pace to attend simple repetitive tasks, and withstand the stress and pressure associated with daily work.  (*PageID* 263.)  Mr. Rains felt that Thompson's ability to manage funds in his best interest was problematic.  (*Id.*)

On June 18, 2008, Mr. Rain replied to the Bureau's inquiry (*PageID* 285) to clarify his findings.  (*PageID* 282-83.)  Mr. Rain reiterated his finding that Thompson was not always a reliable historian because he was confused.  (*PageID* 282.)  According to Mr.

11

Rain, Thompson's confusion was largely associated with an organic mood disorder due to his reported history of alcoholism.  (*Id.*)  He also noted that Thompson's migraines could have been a contributing factor.  (*Id.*)  Mr. Rain noted that Thompson had memory problems in all three spheres, and confusion, and that he presented with evidence of decompensation.  (*Id.*)  He noted that Thompson's problems with non-adaptive behavior was supported by his report that he had been fired from "every job I've had."  (*PageID* 283.)

Irma Johnston, Psy.D./Marianne Collins, Ph.D.  After her review of the record on June 10, 2008, state agency psychologist, Dr. Johnston, reported that a medically determinable impairment of mood disorder, was present, but was not severe.  (*PageID* 269.)  Dr. Johnston opined that Thompson was mildly limited his activities of daily living, moderately limited in maintaining social functioning and in maintaining concentration, persistence or pace, and no episodes of decompensation.  (*PageID* 276.)  Dr. Johnston further determined that the evidence did not establish the presence of the "C" criteria.  (*PageID* 277.)

After reviewing Mr. Rain's reply to the Bureau's inquiry on July 9, 2008, Dr. Johnston discounted Mr. Rain's assessment and found that Thompson was moderately limited to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruption from psychologically based symptoms, and perform at a

consistent pace without unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting.  (*PageID* 286-87.)  In a narrative assessment of Thompson's ability to engage in work-related activities from a mental standpoint, Dr. Johnston noted that there were inconsistencies in the file concerning Thompson's cognitive abilities, including his ability to drive and perform activities of daily living.  (*PageID* 288.)  She also found that Thompson was only partially credible.  (*Id.*)

She gave Mr. Rain's conclusions regarding Thompson's functional limitations limited weight.  (*PageID* 289.)  Dr. Johnston opined that Thompson retained the capacity to understand, recall, and perform simple repetitive tasks in a relatively static work-like setting where there were no strict production quotas.  (*Id.*)  Dr. Johnston concluded that Thompson could relate to others on an infrequent and superficial basis, and would work best in a job that was away from the general public.  (*Id.*)  In October 2008, Dr. Collins, another state agency psychologist, affirmed Dr. Johnston's assessment.  (*PageID* 298.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1.  The claimant has not engaged in substantial gainful activity since March 5, 2008, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: sleep apnea with an occasional mood disorder and headaches (20 CFR 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part  404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, [the administrative law judge] find[s] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR  416.967(b) except the claimant is precluded from climbing ladders/ropes/scaffolds, operating a motor vehicle and working at heights.  Moreover, the claimant must avoid exposure to hazardous moving machinery. Mentally, the claimant is limited to simple, repetitive tasks;  a static  work environment; and superficial, infrequent contact with coworkers. The claimant must avoid public contact and strict  production quotas.

5.     The claimant  is capable of performing past relevant work as a janitor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.     The claimant has not been under a disability, as defined in the Social Security Act, since March 5, 2008, the date the application was filed (20 CFR 416.920(f)).

(*PageID* 61-68, citation to record omitted.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

14

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Thompson argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge erred by disregarding the disability opinions of Dr.
  Setnar and Dr. Torello, both examining physicians, who were not contradicted by
  any examining source. (Doc. No. 12.) Thompson argues that the administrative
  law judge gave "little weight" to Dr. Setnar's opinion which was corroborated by
  Dr. Torello. Dr. Torello's disability opinion was objectively supported by a PFS
  in which there were obstructive, restrictive, and diffusion capacity abnormalities.
  This opinion and the PFS were specifically pointed out to the administrative law
  judge during the hearing, but were omitted from the decision. Thompson also
  argues that the administrative law judge instead relied on the opinion of State
  Agency reviewers who not only had not seen all of the evidence, but discounted
  without rationale the disability opinion of Dr. Setnar. According to Thompson,
  "The most glaring omission in the decision was the failure to even mention Dr.
  Torello and the PFS she obtained." Doc. No. 12 at *PageID* 339.

15

- <u>The administrative law judge erred in disregarding the disability opinion of Psychologist Allen Rain, a consultative examiner, who diagnosed a mood disorder, and found multiple areas of marked impairment.</u>  Thompson argues that the administrative law judge's basis for assigning "little weight" to Mr. Rains opinion was flawed. Thompson also argues that the administrative law judge omitted in his decision, any discussion as to Mr. Rain's addendum with the same neglect it accorded Dr. Torello and the PFS. Thompson concluded that no examining source disagreed with Mr. Rain, nor was any rationale was provided by the reviewers for discounting that opinion.

- <u>The administrative law judge failed to correctly assess plaintiff's credibility and failed to state "good reasons" based in the record, for finding him not fully credible.</u>  Thompson argues that in finding him not fully credible, regarding his OSA and headaches, the administrative law judge emphasized the lack of objective evidence while neglecting consideration of the PFS.  Thompson continued that such a reliance solely on objective evidence was rejected in the credibility determination in  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

<u>**Analysis.**</u>

In formulating Thompson's physical residual functional capacity, the administrative law judge adopted the assessment of the state agency physicians, Dr. McCloud and Dr. Bolz.  (*PageID* 64.)

16

Plaintiff argues the administrative law judge cannot rely on the opinions of reviewing physicians to justify his residual functional capacity assessment because they were "non-examining physicians, of unstated specialty, who non-examined the claimant prior to the PFS." (Doc. 12 at *PageID* 342.) However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §416.927(e). Dr. McCloud specifically restricted Thompson to occasionally climb ramps and stairs but could never climb ladders, ropes, or scaffolds due to daytime somnolence from sleep apnea. (Page ID 292.) Dr. McCloud further precluded Thompson from working around hazards due to daytime somnolence from sleep apnea. (*PageID* 294.)

The administrative law judge's reasons for assigning "little" weight Dr. Setnar's opinions and assigning "some" weight to the contrary opinions of Drs. McCloud and Bolz are supported by substantial evidence. The administrative law judge properly noted that Dr. Setnar's opinion was internally inconsistent. (*PageID* 64.) The administrative law judge concluded that plaintiff was more restricted than Dr. McCloud noted in his opinion and therefore concluded that plaintiff could perform a limited

range of light work.  (*PageID* 63.)  In addition, the record consisted of only conservative treatment.  Plaintiff contends the lack of treatment is due to financial reasons, but as the administrative law judge pointed out during the hearing and in the decision, there are numerous health clinics in his county where he could obtain free or reduced-cost medications.  (*PageID* 66, 100.)  The administrative law judge also noted, "Interestingly, the claimant can still afford cigarettes." (*PageID* 66.)  The administrative law judge also gave plaintiff a guide to free services in the city during the hearing.  (*PageID* 100.) For these reasons, the record contained substantial evidence supporting the administrative law judge's weighing of Dr. Setnar's, Dr. McCloud's, and Dr. Bolz's opinions.

Plaintiff also contends that, "Where the decision totally failed to mention the PFS or Dr. Torello's disability opinion, these reviewers opinions were not substantial evidence based on the record as a whole."  *See* Doc. 12 at *PageID* 342.  Although the administrative law judge does not mention Dr. Torello by name, a review of the decision, clearly shows that the administrative law judge followed 20 CFR 416.927 and properly did not accept Dr. Torello's opinion.  *See PageID* 63-65.

Dr. Torello's opinion contains no rationale for the conclusions reached.  For example,  Dr. Torello simply stated that Thompson needed his blood pressure controlled before employment.  (*PageID* 397.)  An opinion without supporting reasons is entitled to very little credibility.  Dr. Torello also reported that he would be unemployable for thirty days to nine months.  *See* 20 C.F.R. § 416.909.

18

I will next address Thompson's arguments concerning his mental residual functional capacity.  First, Thompson argues that the administrative law judge was incorrect in rejecting Mr. Rain's opinion as Mr. Rain was the only mental health source to have examined Thompson.  Thompson is correct that the administrative law judge concurred with Dr. Johnston in rejecting Mr. Rain's interpretation of the record evidence.  In order to determine whether the administrative law judge acted properly in disagreeing with a medical source, I must first determine the medical source's classification.  Of the three types of medical sources-nonexamining sources, nontreating (but examining) sources, and treating sources-Mr. Rain was the second.  *See* 20 C.F.R. § 416.902; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ( "A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [him].").  In contrast, Dr. Johnston was a "nonexamining source." *See Smith*, 482 F.3d at 875 ("A 'nonexamining source' is 'a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case.' ").

The Social Security Administration gives the most weight to opinions from a claimant's treating source; accordingly, an administrative law judge is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion."  (*Id.*)  However, this requirement only applies to *treating* sources.  (*Id.* at 876.)  With regard to nontreating, but examining, sources, the agency will simply "[g]enerally [ ] give more weight to the opinion of a

19

source who has examined [the claimant] than to the opinion of a source who has not examined" him. 20 C.F.R. § 416.927(e)(1); *see also Smith*, 482 F.3d at 875.  Because Mr. Rain should not have been afforded controlling weight, in order to determine how much weight to give Mr. Rain's opinion, the Regulations require administrative law judges to weigh their opinions with the factors - supportability, consistency, specialization, and so on-described in 20 C.F.R. §416.927(e).

The record shows that the administrative law judge considered relevant factors in its determination to credit Dr. Johnston''s assessment over Mr. Rain's.  The administrative law judge agreed with Dr. Johnston in rejecting Mr. Rain's finding that Thompson would have marked limitation in his abilities to: relate to others including co-workers and supervisors, perform simple instructions, maintain attention, concentration, persistence, and pace to attend simple repetitive tasks, and withstand the stress and pressure associated with daily work.  (*PageID* 263.)  The administrative law judge found that Mr. Rain's conclusion was not fully supported by his own materials or the record as a whole.

The administrative law judge also gave little weight to Mr. Rain's opinion because it was inconsistent with plaintiff's self-reported activities, influenced by plaintiff's alleged migraine during the examination, was not consistent with plaintiff's mental health treatment, and was not supported by plaintiff's testimony at the administrative hearing.  (*PageID* 64.)  The administrative law judge's conclusion that Mr. Rain's "markedly limited" functional capacity conclusion is not fully supported by

20

the notes of his single meeting with Thompson is supported by substantial evidence.
Further, the administrative law judge cited the absence in the record of other evidence
that Thompson lacked the mental ability to perform any work activity.  The
administrative law judge noted that Thompson had not received any mental health
treatment nor complained of psychological symptoms while pursuing any other form of
medical care.  The administrative law judge also observed that the record does not
contain evidence of abnormal clinical and laboratory findings sufficient to document
any further degree of loss of function.  (*PageID* 63.)  The administrative law judge's
decision to place more weight on the conclusions of Dr. Johnston than those of Mr. Rain
is supported by substantial evidence.

<u>Credibility.</u>

Thompson's next claim of error finds fault with the administrative law judge's
credibility determination.  Specifically, Thompson claims that regarding his OSA and
headaches, the administrative law judge emphasized the lack of objective evidence
while neglecting consideration of the PFS.  Thompson alleges that the administrative
law judge incorrectly noted that his allegations of disability due to his obstructive sleep
apnea and headaches were not consistent with objective medical evidence.  Thompson
argues the administrative law judge cannot rely soley on objective evidence.  (Doc. No.
12 at *PageID* 344-46.)

An administrative law judge "is not required to accept a claimant's subjective
complaints and may consider the credibility of a claimant when making a

21

determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 469, 476 (6th Cir.

2003), citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  An

administrative law judge's credibility determinations about a claimant are to be given

great weight.  However, they must also be supported by substantial evidence.  *Cruse v.*

*Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). "Discounting credibility to a certain

degree is appropriate where an administrative law judge finds contradictions among

medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531,

citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

   In the instant case, the record is replete with objective medical evidence

indicating that Thompson had medically determinable impairments.  The

administrative law judge acknowledged these impairments, and found that, "[t]he

objective evidence fails to document the presence of any impairment or combination of

impairments that could reasonably be expected to result in pain or other symptoms..."

(*PageID* 65.)  The administrative law judge determined, however, that after considering

the intensity, persistence, and limiting effect of Thompson's impairments, he was

capable of light exertional work.  (*PageID* 63-67.)  In making this credibility

determination, the administrative law judge properly relied on the record evidence,

including objective medical findings and Thompson's own statements about his daily

activities.  *See* 20 C.F.R. § 416.929(c)(2) (objective medical findings are useful in assessing

the intensity and persistence of a claimant's symptoms) and 20 C.F.R. § 416.929(c)(3)(i)

(daily activities may be useful to assess nature and severity of claimant's symptoms).

The administrative law judge found that Thompson's statements regarding his varied activities contradict his allegations concerning the intensity, duration, and limiting effects of his symptoms.  (*PageID* 62, 66.)  The administrative law judge noted that Thompson could go out and "scrap" (finding metal cans) for six to eight hours at a time on the weekends through August 2008, despite his testimony that he falls asleep eight to 10 times a day for up to 90 minutes.  (*Id.*)  Thompson reported he is able to take care of personal grooming and is able to perform household, cleaning and chores. (*PageID* 62, citing to *PageID* 203, 262-63.)  It was not improper for the administrative law judge to consider plaintiff's ability to engage in activities of daily living in assessing the credibility of his claims to be unable to work.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004), citing *Walters*, 127 F.3d at 532.

Based upon the foregoing, the undersigned finds that the administrative law judge's assessment of Thompson's credibility was based on consideration of the entire record and is supported by substantial evidence.  Accordingly, applying the applicable deferential standard of review, the undersigned concludes that the administrative law judge's credibility determination was not erroneous.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.  It is FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within

fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


   s/Mark R. Abel        
United States Magistrate Judge